IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DEANGELO AVERY DOBBS,**

    **Plaintiff,**

    v.

**FERNANDO MESSER,**

    **Defendants**

Case No. 22-3182-JWL-JPO

## ORDER TO SHOW CAUSE

This matter is before the court on the defendants' report prepared under *Martinez v. Aaron,* 570 F.2d 317 (10th Cir. 1978). The court has examined the report and attachments and directs plaintiff to show cause why this matter should not be dismissed for failure to state a claim for relief.

### Background

Plaintiff is a prisoner at the Atchison County Jail (ACJ). He filed this matter on August 25, 2022, claiming that his rights were violated when he was held in lockdown over 35 days without a disciplinary report, that he has been denied access to the law library, that he has been denied adequate medical care, and that he has been subjected to cruel and unusual punishment.

The *Martinez* report shows that plaintiff first was admitted to the ACJ on February 7, 2020. He was released on bond on April 28, 2020. However, he was readmitted on May 12, 2022, due to a bond violation arising from arrest warrants. Upon his readmission, the Missouri Department of Corrections placed a hold.

### Analysis

**1. Placement on lockdown**

Inmates held in the ACJ are subject to discipline for failure to follow the facility's rules. The rules and guidelines are posted on kiosks in the housing pods. Placement on lockdown is a disciplinary measure in which an inmate is restricted to his room except for one hour each day. The duration of the lockdown sanction is determined by the Jail Administrator based on several factors, including the nature of the misconduct and the inmate's disciplinary history.

On July 28, 2022, plaintiff was involved in a fight with another inmate. Both were placed on lockdown pending a review of the incident (Doc. 8, Ex. 1, 1-D). On August 1, 2022, the Jail Administrator reviewed video of the incident and sanctioned both inmates with 14 days of lockdown with credit from the time of the incident. Plaintiff was given written notice of the decision on August 1, 2022 (Ex. 1-E at p. 22).

On August 5, 2022, plaintiff called Jail Officer Vivian Mercer to ask why his cell door was opened at 1430 hours. Ms. Mercer explained that plaintiff's daily hour out of his room begins at 1430. Plaintiff wanted his hour to begin at 1500 and cursed at Ms. Mercer. He then came out of his cell and threw a food tray and books down from the second floor (Ex. 1-D).

On August 8, plaintiff was released from his cell for his hour at approximately 1505 hours. He then kicked a food tray from the top tier and threw food to the Control Tower Window (Ex. 1-D, Incident Report No. 1798).

On August 9, 2022, plaintiff received an additional 7 days of lockdown due to the events of August 5 and August 8. He received written notice of the decision on August 9 (Ex. 1-E, p. 23).

On August 16, 2022, plaintiff received additional incident reports for interfering with a bed check, cursing at staff, and throwing newspaper at staff (Incident Reports 1799 and 1800, Ex.1-D at pp. 8-10). He was sanctioned with an additional 14 days of lockdown and 14 days of

Chirp restriction.[1] (Ex. E-1 at p. 19). Plaintiff received notice of this lockdown sanction on August 19, 2022. He was released from lockdown on August 31, 2022 and has not been in that status since that time.

Plaintiff submitted a number of grievances complaining that he was not afforded due process in the consideration of the incident reports and imposition of sanctions.

Plaintiff's claim that he was placed in lockdown without a hearing or other opportunity to defend himself does not state a federal constitutional violation because he is not entitled to a particular degree of liberty in prison. *Sandin v. Conner*, 515 U.S. 472 (1995); *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (There is no right independently protected under the Due Process Clause to remain in the general prison population.). Plaintiff has not set forth any extreme conditions to suggest that he was subjected to the type of atypical and significant deprivation that warrants due process protection.

The United States Supreme Court has held that the Government has "legitimate interests that stem from its need to manage the facility in which the individual is detained." *Bell v. Wolfish*, 441 U.S. 520, 540 (1979). "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.*

Decisions such as those described in the *Martinez* report are "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these

---

[1] Inmates in the ACJ until recently could use handheld devices called Chirps to send and receive text messages to anyone whose number was registered with the ACJ. They now have tablets which provide greater privileges. The Chirp restriction did not prevent an inmate from communicating with persons outside the ACJ. (Doc. 8, p. 5, n. 6.)

considerations, courts should ordinarily defer to their expert judgment in such matters." *Id.* at 540, n.23 (citations omitted).

There is no showing that the lockdown was an exaggerated response to plaintiff's failure to maintain good behavior, and there likewise is no suggestion that the actions were not reasonably related to the legitimate interest in maintaining order in the ACJ.

**2. Medical care**

Plaintiff submitted a grievance on August 22, 2022, complaining that he had put in several sick calls and that none of them had been answered. He also claimed he had been in the ACJ for 3 months and had not yet seen a nurse. Finally, he complained that none of the guards were "medically certified" to hand out medication (Ex. 1-E at p. 21).

Jail records show that plaintiff saw the health care provider on August 23, 2022, and on September 20, 2022. He was prescribed medication after both visits. There is no evidence that he previously sought medical care (Ex. 1).

A pretrial detainee has a right to adequate medical care while in custody. This right is secured by the Fourteenth Amendment. *See Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019) ("The constitutional protection against deliberate indifference to a pretrial detainee's serious medical condition springs from the Fourteenth Amendment's Due Process Clause."). Under the deliberate indifference standard, prison officials violate the Constitution when they act with "deliberate indifference to an inmate's serious medical needs." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

To state a claim of deliberate indifference, plaintiff must show first, that he has a medical need that is sufficiently serious, meaning that "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation marks omitted).

Second, plaintiff must show that the defendant official knew of and disregarded an excessive risk to his health or safety. In this context, the necessary showing is that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff's bare assertion of a lack of medical care is not sufficient to state a claim for relief. He has not identified any facts to show deliberate indifference, and the record shows that he has been seen twice by a health care provider and been prescribed medication. His complaint that guards are not "medically certified" to handle medications does not implicate a constitutional right.

**3. Access to law library**

The *Martinez* report states that plaintiff's access to the law library has never been restricted. Inmates at the ACJ have access to the law library located in the nearby courthouse provided they first obtain permission from the court. Records maintained by the ACJ show that on June 21, July 19, and July 21, 2022, plaintiff refused to go to the law library (Ex. 1; 1-B). In the roughly three weeks prior to the October 28, 2022, submission of the *Martinez* report, the ACJ transitioned to providing electronic access to law library in the multi-purpose room of the ACJ.

It is settled law that an inmate has a constitutional right of access to the courts. It also is settled that "to present a viable claim for denial of access, the inmate must allege and prove prejudice arising from Defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir.

1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate ... show actual injury derives ultimately from the doctrine of standing."). An inmate claiming a denial of access to the courts may meet the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53. Generally, the plaintiff must show that, by denying plaintiff access to the law library, prison officials frustrated or impeded the plaintiff's ability to file a non-frivolous action. *Id.* at 351, 354–55.

In *Lewis*, the Supreme Court explained that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Instead, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id.* at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original).

Plaintiff has not provided sufficient detail to show a denial of access to the courts. While he alleges he was not allowed to go to the law library while held in lockdown (Doc. 1, p.3), he has not identified any injury arising from that, and it appears he refused other opportunities to use the law library.

### Order to Show Cause

Plaintiff is required to show good cause why his complaint should not be dismissed for the reasons explained in this order. In the alternative, plaintiff may submit an amended complaint that cures the deficiencies identified by the court. Plaintiff's amended complaint must be submitted upon court-approved forms. In order to add claims or significant factual allegations, or to change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not an addendum or supplement to the original complaint but

completely supersedes it. Therefore, any claims or allegations not presented in the amended complaint are no longer before the Court. Plaintiff may not simply refer to an earlier pleading; instead, the complaint must contain all allegations and claims that plaintiff intends to present in the action, including those to be retained from the original complaint. Plaintiff must include the case number of this action on the first page of the amended complaint.

Plaintiff must name every defendant in the caption of the amended complaint. See Fed. R. Civ. P. 10(a). Plaintiff must refer to each defendant in the body of the complaint and must allege specific facts that the describe the allegedly unconstitutional acts or omissions by each defendant, including dates, locations, and circumstances. The failure to respond by the deadline may result in dismissal of this matter without further notice for failure to state a claim.

THE COURT THEREFORE ORDERS that plaintiff is granted to and including November 30, 2022, to respond to the order to show cause or to submit an amended complaint that complies with the directions of the court.

IT IS SO ORDERED.

Dated: October 31, 2022              /s/  James P. O'Hara
                                     JAMES P. O'HARA
                                     UNITED STATES DISTRICT JUDGE